UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeffrey Jay LaValle,                                    Civil No. 06-123 (JRT/FLN)

        Plaintiff,

        v.                                         **REPORT AND**
                                                    **RECOMMENDATION**

United States of America,

        Defendant.

_____

*Pro Se* Plaintiff.
Friedrich Siekert for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 15, 2006, on Defendants' motion to dismiss [#21].  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons which follow, this Court recommends Defendant's Motion to Dismiss [#21] be granted.

## I.   FINDINGS OF FACT

Plaintiff Jeffrey LaValle served in the United States Navy from June 1989 to November 1991, when he was honorably discharged for medical conditions.  Plaintiff carries a one hundred percent service-connected disability based on several psychiatric disorder diagnoses and he also collects social security disability.

On September 5, 2000, Plaintiff was referred by his counselor for a routine psychological work-up to provide recommendations for Plaintiff's "vocational rehabilitation feasibility." (Declaration of Friedrich Siekert (hereinafter "Siekert Decl.") Ex. 1.)  As a result of this referral, Plaintiff was seen by Dr. Paul Aribisi and Dr. Brian Engdahl, among other physicians.  (Siekert Decl. Ex. 2.)  Plaintiff was seen by Dr. Aribisi in December, 2000, and by Dr. Engdahl in October,

2000, and February, 2001.  (Seikert Decl. Ex. 2 at 3-7.)

On May 14, 2001, Plaintiff was informed by letter that the VA denied his request for vocational rehabilitation benefits because it was determined that it was not reasonably feasible for him to achieve a vocational goal since providing him services would not result in him becoming employed.  (Seikert Decl. Ex. 3.)  It appears that Plaintiff sought reconsideration of this decision from the Oakland, California VA office.  On July 25, 2001, the VA office in Oakland, California confirmed Plaintiff's 100 percent disability rating and the determination that it was not reasonably feasible for Plaintiff to achieve either employment or self-employment.  (Seikert Decl. Ex. 4.)  Thereafter, Plaintiff requested an administrative review by the St. Paul VA office of his records concerning this decision, and on November 23, 2001, the May 14, 2001, determination was upheld.  (Seikert Decl. Ex. 5.)  This letter stated that one of the reasons for the denial of Plaintiff's request for vocational rehabilitation benefits was an assessment of Plaintiff's general functioning by Dr. Aribisi on December 21, 2000.  (Seikert Decl. Ex. 4.)

At some point after receiving the November 23, 2001, letter, Plaintiff filed a Notice of Disagreement and was issued a "Statement of the Case" on January 20, 2004.  (Seikert Decl. Ex. 6.)  The record is not clear as to whether Plaintiff perfected an appeal to the Board of Veterans Appeals or the status of that appeal, although at the hearing on this matter Plaintiff stated that he currently had an appeal pending in front of the Board of Veterans Appeals.

On Feburary 20, 2004, Plaintiff submitted an administrative tort claim, SF-95, to the VA.  (Seikert Decl. Ex 7.)  On August 26, 2004, the VA Office of Regional Counsel denied Plaintiff's tort claim.  (Seikert Decl. Ex. 8.)  The VA Office of Regional Counsel denied Plaintiff's claims for three reasons.  First, the VA Office of Regional Counsel concluded that there was no evidence of any

negligent act or omission on the part of VA employees that caused injury to Plaintiff.  (Seikert Decl. Ex. 8.)  Second, the VA Office of Regional Counsel concluded that Plaintiff's claim was untimely, as Plaintiff's claim on February 20, 2004, was more than two years after the date of the alleged negligence.  (Seikert Decl. Ex. 8.)  The VA Office of Regional Counsel noted that Plaintiff was informed by letter in July, 2001, that there were many reasons for the VA's denial of his request for vocational rehabilitation services, and one of those reasons was the assessment of Plaintiff's functioning by Dr. Aribisi in December 2000.  (Seikert Decl. Ex. 8.)  Finally, Plaintiff's claim was denied because the VA Office of Regional Counsel concluded that Dr. Aribisi's evaluation was undertaken as a result of a referral requesting "recommendations for vocational rehabilitation feasibility" and that such an evaluation did "not establish a physician-patient relationship for a claim of medical negligence under the Federal Tort Claims Act."  (Seikert Decl. Ex 8.)

Plaintiff requested reconsideration of this decision, and on July 7, 2005, Plaintiff received a letter from the VA Office of General Counsel affirming the denial of his claim.  (Seikert Decl. Ex. 9.)  The VA Office of General Counsel concluded that there was no evidence of a negligent or wrongful act by any VA employee that allegedly caused injury to Plaintiff.  (Seikert Decl. Ex. 9.)  Furthermore, the VA Office of General Counsel concluded that Plaintiff's claim was untimely and that there was no physician-patient relationship between Plaintiff and the psychologists who evaluated him to provide recommendations to the VA for vocational rehabilitation feasibility.  (Seikert Decl. Ex. 9.)  Plaintiff initiated the present suit on January 6, 2006.  (Docket Number 1.)

In his Amended Complaint, Plaintiff alleges a "tort claim against the United States Department of Veterans Affairs alleging Negligence, Medical Malpractice and Omission of Record on a SF-95 dated 02/20/05."  (Am. Compl. at 1.)  Plaintiff's amended complaint describes several

incidents that are seemingly unrelated.  First, Plaintiff states that he initially requested assistance

from the Department of Veterans Affairs (hereinafter "VA") concerning the criminal actions of "A

Susan Joan Weaver Ph.D University of Minnesota."  (Am. Compl. at 2.)  Plaintiff states that his

issues with Ms. Weaver include slander, libel, stolen mail, and stolen social security tax records.

Plaintiff claims that there have been several court cases that ensued regarding these issues, and that

he was awarded judgment in one case, but that he was thrown into jail for "asserting" the money he

was owed.  (Am. Compl. at 2-3.)

    After describing these events, Plaintiff continues in the next paragraph of the Amended

Complaint to describe events related to the VA's denial of his request for vocational rehabilitation

benefits.  Plaintiff states that he met with psychologist Brian Engdahl and Paul A. Aribissi on some

unspecified date and

> informed both in great details as to the negative experience and the harassment that
> [Plaintiff] was experiencing in reference to this Individual [presumably Ms. Weaver]
> was creating for Plaintiff and the level of Harassment he was experiencing at that
> time.  It also had direct impact on the level of performance of Plaintiffs ability to
> participate in the program.  Case in point is simply this, how can one make scheduled
> VA Appointments or Business appointments when one is being incarcerated for an
> individual whom has stolen mail, lied, stolen the social security information and had
> put plaintiff behind bars to top things off?

(Am. Compl. at 3.)  Plaintiff goes on to state that he requested assistance from both of these

psychologists on three separate occasions and both psychologists denied his requests for assistance

each time.  (Am. Compl. at 4.)  Plaintiff states that the VA refuses to address his claims, and then

proceeds to request permission from this Court to address the following two questions: (1) "Is mail

theft a crime or not, and if so, is it to be considered a felony offense or not," and (2)

> If mail is being stolen from the IRS and the VA, and one has been informed to not
> 'bother the VA with such issues', being that the VA IS [sic] a Federal Executive
> Agency and they 'order you to Cease and Desist' In [sic] reference to these issues,

then where does one take it to?

(Am. Compl. at 4.)

Plaintiff then states that he seeks relief from the Court in accordance with Federal Rule of

Civil Procedure Rule 9(g).  Plaintiff states

> Due to averment of Compromise of Benefits by theft of Social Security # [sic] and
> Fraudulent Application for Military benefits thereby "Flagging" and the effect that
> this has had on other benefits, to include:
> A) Montgomery GI Bill,
> B) Vocational Rehabilitation
>> 1. Plaintiff has been disqualified from services, in which damages included Plaintiff
>> lost business,
>> 2. Plaintiff lost 10,000,000 Penny shares of stock assigned to business amounting to
>> $100,000.00,
>> 3. Plaintiff lost VA federal Contracts for Prostate and Breast Cancer
>> 4. Plaintiff lost promised reimbursements amounting to 186,000 dollars in lost sale
>> of products.
> C) Plaintiff had to turn in his G.I Home loan Certificate for $250,000.00.

(Am. Compl. at 5.)   In addition, Plaintiff requests that the Court order the Social Security

Administration to issue a new social security number to Plaintiff, and requests damages in the

amount of two million dollars for emotional duress and compensatory damages. (Am. Compl. at 5.)

In the present case it appears that Plaintiff is attempting to challenge (1) the denial of his

request for vocational rehabilitation benefits by the VA and (2) the psychological evaluations

completed by Dr. Aribisi and Dr. Engdahl, which formed a partial basis for the denial of his

vocational rehabilitation benefits and which Plaintiff claims amounted to negligence and medical

malpractice.  Defendant moves to dismiss Plaintiff's amended complaint, arguing (1) that Plaintiff's

request for the district court to review the denial of his request for vocational rehabilitation benefits

is barred by 38 U.S.C. § 511, and (2) that Plaintiff's claims pursuant to the Federal Tort Claims Act

are untimely.

5

## II.   STANDARD OF REVIEW

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  However, Defendants submitted the Seikert Declaration and nine exhibits in support of their motion.  Therefore, pursuant to Federal Rule of Civil Procedure Rule 12(c), the current motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(c).

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To determine whether a certain fact is material, " it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id*. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  When the moving party brings forth a proper

summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ.P. 56(e); *see Anderson*, 477 U.S. at 256; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III.   LEGAL ANALYSIS

**A.      This Court Lacks Subject Matter Jurisdiction to Review the Vocational Rehabilitation Benefits Determination of the VA.**

Plaintiff attempts to seek review of the VA's determination of his claim for individual benefits.  In 1988 Congress passed the Veterans' Judicial Review Act (hereinafter "Act").  Pub. L. No. 100-687, November 18, 1988, 102 Stat. 4105.  The Act established a process for reviewing the denial of a veteran's benefits.  To initiate the review process, the veteran must file a notice of disagreement regarding the initial decision with the Board of Veterans' Appeals. 38 U.S.C. § 7105. Once a notice of disagreement is filed, the Board of Veterans' Appeals will "take such development or review action as it deems proper under the provisions of regulations not inconsistent with this title."  38 U.S.C. § 7105(d)(1).  If the action taken by the Board of Veterans' Appeals "does not resolve the disagreement either by granting the benefit sought or through withdrawal of the notice of disagreement, such agency shall prepare a statement of the case."  *Id*.  Once a statement of the case is completed, copies of the statement will be provided to the claimant and the claimant "will be afforded a period of sixty days from the date the statement of the case is mailed to file the formal appeal."  38 U.S.C. § 7105(d)(3).

The decision of the Board of Veterans' Appeals is the final decision of the Secretary.  38 U.S.C. § 7104(a).  38 U.S.C. § 511 states

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b) [which is not applicable in the present case], the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a).

The Eighth Circuit described the process required to review the final decision of the Secretary as follows:

> The review of the Secretary's final decision is governed by Chapter 72 of Title 38 of the United States Code. To obtain judicial review, the veteran must file a notice of appeal. 38 U.S.C. § 7266(a). The Court of Veterans Appeals has 'exclusive jurisdiction' to review the decisions of the Board of Veterans' Appeals. 38 U.S.C. § 7252(a). Appeal from the Court of Veterans Appeals may be taken to the Court of Appeals for the Federal Circuit. 38 U.S.C. §7292.

*Hicks v. Veterans Administration*, 961 F.2d 1367, 1369 (8th Cir.1992). The Court of Appeals for the Federal Circuit has exclusive jurisdiction to review the decision of the Court of Veterans Appeals. 38 U.S.C. § 7292 (c). Therefore, in order to obtain review of the final decision of the Secretary, a veteran must first file a notice of appeal and then appeal the adverse decision to the Court of Veterans Appeals. If that appeal fails, the veteran must appeal the decision of the Court of Veterans Appeals to the Court of Appeals for the Federal Circuit.

In the present case, Plaintiff attempts to attack the VA's decision to deny his request for vocational rehabilitation benefits. To the extent that Plaintiff is attempting to challenge the VA's denial of vocational rehabilitation benefits, this Court lacks jurisdiction to hear that claim. As stated above, Plaintiff must follow the procedures described in the Act in order to properly appeal the denial of VA benefits. This Court is not empowered by statute to hear Plaintiff's claims regarding the denial of VA benefits, as the Court of Appeals for the Federal Circuit has exclusive jurisdiction

over appeals from the Court of Veterans Appeals.  Therefore, the Court recommends that

Defendant's motion for summary judgment be granted insofar as it relates to Plaintiff's attempted

challenge to the denial of his request for VA benefits.

> **B.      Plaintiff's Claims Under the Federal Tort Claims Act Are Untimely; Therefore, This Court Does Not Have Jurisdiction to Hear Those Claims.**

In addition to his claim challenging the denial of VA benefits, Plaintiff also asserts claims

for medical malpractice and negligence against the United States.  "It is axiomatic that the United

States may not be sued without its consent and that the existence of consent is a prerequisite for

jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The United States Government

has waived sovereign immunity in limited cases, including for claims properly brought under the

Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671, *et. seq.* 28 U.S.C. § 2675(a) states

that

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  Therefore, as a prerequisite to filing a lawsuit against the United States

pursuant to the FTCA, a claimant must first present a completed claim for personal injury to the

appropriate federal agency.

In the present case, the appropriate federal agency with which to file a completed claim for

personal injury is the VA, and Plaintiff completed this step of the process.  Plaintiff filed a claim for

personal injury with the VA on February 20, 2004, and the VA Office of Regional Counsel denied

Plaintiff's claim on August 26, 2004.  (Seikert Decl. Ex. 7-8.)  Plaintiff thereafter filed a Request

for Reconsideration with the VA Office of General Counsel, and Plaintiff's claim was finally denied

on July 7, 2005.  (Seikert Decl. Ex. 9.)

The FTCA also requires the administrative tort claim to be submitted to the applicable

federal agency within two years of the accrual of the claim.  28 U.S.C. § 2401(b) states

> A tort claim against the United States shall be forever barred unless it is presented
> in writing to the appropriate Federal agency within two years after such claim
> accrues or unless action is begun within six months after the date of mailing, by
> certified or registered mail, of notice of final denial of the claim by the agency to
> which it was presented.

28 U.S.C. § 2401(b).  The Eighth Circuit has noted that "[w]hen a claim accrues is a question of

federal law."  *Wehrman v. United States*, 830 F.2d 1480, 1482-83 (8th Cir.1987).  The Eighth Circuit

stated  that

> The general rule under the Act is that a tort claim accrues, for statute of limitations
> purposes, at the time of the plaintiff's injury. . . . Medical malpractice cases are a
> recognized exception to this rule. In these cases a claim accrues when a plaintiff has
> discovered both his injury and its probable cause, even though he may be ignorant
> of his legal rights.

*Snyder v. United States*, 717 F.2d 1193, 1195 (8th Cir.1983)(citing *United States v. Kubrick*, 444

U.S. 111 (1979)).  Therefore, the critical determination for statute of limitation purposes is to

determine when the plaintiff "actually knew, or in the exercise of reasonable diligence should have

known, the cause and existence of his injury."  *Id*.

In the present case, it is clear that Plaintiff knew of the existence of his injury, that he was

denied vocational rehabilitation benefits, by May 14, 2001, when he was notified that his request

for vocational rehabilitation benefits was denied by the VA.  (Seikert Decl. Ex. 3.)  In addition, it

is clear that Plaintiff knew of the probable cause of his injury by July 25, 2001, as the July 25, 2001,

denial letter states that one of the reasons for the denial of Plaintiff's request for benefits was an

assessment of Plaintiff's general functioning by Dr. Aribisi on December 21, 2000.  (Seikert Decl. Ex. 4.)  Therefore, the statute of limitations for the present case began to accrue on July 25, 2001, when Plaintiff became aware of both the existence and probable cause of his injury.  As the statute of limitations in cases brought pursuant to the FTCA is two years, Plaintiff was required to submit his initial FTCA claim to the VA within two years of the accrual of his claim, or by July 25, 2003.

In the present case Plaintiff did not submit his initial FTCA claim to the VA until February 20, 2004.  (Seikert Decl. Ex. 7.)  Since Plaintiff was clearly notified of the existence of his injury and the probable cause of his injury by July 25, 2001, and his initial FTCA claim was due to the VA by July 25, 2003, Plaintiff's claims are time-barred pursuant to 28 U.S.C. § 2401(b) because he did not file his claims with the VA until February 20, 2004.  Since Plaintiff's claims are time-barred, this Court lacks jurisdiction to entertain those claims.  As this Court lacks jurisdiction to entertain Plaintiff's claims, the Court recommends that Defendant's Motion to Dismiss [#21] be granted.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss [#21] be **GRANTED** and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

DATED: January 26, 2007                        s/ *Franklin L. Noel*
                                               FRANKLIN L. NOEL
                                               United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with

11

the Clerk of Court and serving on all parties, on or before **February 14, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 14, 2007,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.